UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD M. CREATORE, | ) | Case No. 5:09CV1877 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | (Magistrate Judge McHargh) |
| ASSURANCE CO. OF AMER., | ) | |
| | ) | |
| Defendant. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The plaintiff Ronald M. Creatore ("Creatore") filed a complaint alleging breach of contract and bad faith denial of benefits in the Summit County (Ohio) Court of Common Pleas, against defendant Assurance Company of America ("Assurance"). Assurance removed the action to this district court, based on diversity of citizenship. (Doc. 1.)

The complaint alleges that Assurance supplied a General Liability Policy ("Policy") to Girton Oakes & Burger, Inc. ("Girton"), and its parent corporation, U.S. Sanitary Corporation ("USSC"). (Doc. 1, complaint, at ¶ 3, and PX A, Policy.) Creatore alleges that he was an executive officer and director of Girton and USSC, and as such was entitled to coverage under the Policy. (Compl., at ¶¶ 5-6, 11.)

Creatore alleges that coverage under the Policy arose because of an involuntary bankruptcy proceeding initiated against Girton. Id. at ¶ 7. Creatore alleges that he notified Assurance of its duty to provide coverage to him in April 2003. Id. at ¶ 8.

Creatore alleges that a complaint that was filed against him in the Mahoning County Court of Common Pleas, by William Sayavich on April 3, 2003, included claims that should have been covered (and defended) under the Policy. Id. at ¶¶ 8, 11-12; see generally doc. 21, PX A, Sayavich Complaint.

Currently before the court is a motion to bifurcate and stay, filed by defendant Assurance. (Doc. 20.) Creatore opposes the motion (doc. 21), and Assurance has filed a reply brief in support (doc. 24).

Assurance moves to bifurcate Creatore's claims for bad faith and punitive damages in accordance with Civil Rule 42(b) and Ohio Rev. Code § 2315.21. (Doc. 20, at 2.) Assurance also moves the court "to stay all discovery as to [Creatore]'s claims for bad faith and punitive damages until [Creatore]'s breach of contract claim has been resolved." Id.

The Federal Rules allow a court "to bifurcate a trial in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Chubb Custom Ins. Co. v. Grange Mut. Cas. Co., No. 2:07CV1285, 2008 WL 4823069, at *2 (S.D. Ohio Nov. 3, 2008) (citing Fed. R. Civ. P. 42(b)); see also Wilson v. Morgan, 477 F.3d 326, 339 (6th Cir. 2006). Only one of these elements needs to be present to justify bifurcation. Ferro Corp. v. Continental Cas. Co., No. 1:06CV1955, 2008 WL 5705575, at *2 (N.D. Ohio Jan. 7, 2008).

"Bifurcation is the exception to the general rule that disputes should be resolved in a single proceeding," and should be ordered only in exceptional cases. Chubb, 2008 WL 4823069, at *2; see also Woods v. State Farm Fire & Cas. Co., No 2:09CV482, 2010 WL 1032018, at *1 (S.D. Ohio Mar. 16, 2010).

The principal purpose of Rule 42(b) "is to enable the trial judge to dispose of a case in a way that advances judicial efficiency and is fair to the parties." Ferro, 2008 WL 5705575, at *2 (quoting In re Bendectin Litig., 857 F.2d 290, 307 (6th Cir. 1988)). Judicial efficiency is to be controlling, rather than the wishes of the parties. Id.

In determining whether to bifurcate, the court should consider "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." Wilson, 477 F.3d at 339 (quoting Martin v. Heideman, 106 F.3d 1308, 1311 (6th Cir. 1997)); Chubb, 2008 WL 4823069, at *2. The party moving for bifurcation bears the burden of demonstrating that these factors weigh in favor of granting the motion. Woods, 2010 WL 1032018, at *1; Ferro, 2008 WL 5705575, at *2.

The parties agree that Ohio Rev. Code § 2315.21 mandates that the punitive damages issue should be bifurcated. (Doc. 20, at 7-8; doc. 21, at 4.)

Assurance argues that it will be prejudiced if it is required to defend the breach of contract claim at the same time as the claim for bad faith. "Assurance will be forced to argue that it properly declined coverage for [Creatore's] claim while simultaneously arguing that even if it did wrongfully decline coverage it acted

3

reasonably in doing so." (Doc. 20, at 4.) Assurance also argues that there is a potential for jury confusion on several issues of coverage preclusions. (Doc. 20, at 4; doc. 24, at 3-4.) Assurance contends that, if the bad faith claim is not bifurcated, "even if Assurance was 'wrong' on the contract issues, whether it was 'right enough' to be deemed to have acted with reasonable justification so as not to be liable in bad faith." (Doc. 20, at 5.)

Assurance claims that judicial efficiency will be served through bifurcation as well:

> Unless and until [Creatore] prevails on his claim for breach of contract, trial on the issues of bad faith and punitive damages is not necessary. Bifurcating [Creatore]'s bad faith and punitive damage claims will simplify the case, and prevent the unnecessary expenditure of time and resources.

(Doc. 20, at 6.) Assurance also moves to stay discovery on Creatore's bad faith and punitive damages claims pending resolution of the breach of contract claim. (Doc. 20, at 8-9.)

Creatore responds that there is significant overlap in discovery pertaining to these two claims. For example, the same witnesses would need to be deposed for each claim, and having to depose them more than once "to ask only slightly different questions" would be highly prejudicial to Creatore, as well as inefficient. (Doc. 21, at 5.) Creatore points out that bifurcation of the punitive damages claim resolves many of Assurance's concerns regarding juror confusion. Id.

Further, Creatore points out that Assurance mistakenly argues that an unfavorable ruling on the breach of contract (coverage) claim will be dispositive of

the entire case. (Doc. 21, at 6; see, e.g., doc. 20, at 6.) Creatore refers the court to the Ohio Supreme Court's decision in Staff Builders, Inc. v. Armstrong.

> In that case, the court held:
>
> An insurer has a duty to act in good faith in the processing and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer irrespective of any liability arising from breach of contract.

Staff Builders, Inc. v. Armstrong, 37 Ohio St.3d 298, 525 N.E.2d 783, 784 (1988) (syllabus). The court quoted from its earlier ruling in Hoskins v. Aetna Life Ins. Co. on this issue:

> The liability of the insurer in such [bad faith] cases does not arise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive. Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties.

Staff Builders, 37 Ohio St.3d at 302, 525 N.E.2d at 788 (quoting Hoskins v. Aetna Life Ins. Co., 6 Ohio St.3d 272, 276, 452 N.E.2d 1315, 1320 (1983)) (internal citations omitted). See also Chubb, 2008 WL 4823069, at *3 (quoting Penton Media, Inc. v. Affiliated FM Ins. Co., No. 06-4315, 2007 WL 2332323, at *5 (6th Cir. Aug. 15, 2007), bad faith in adjustment of insurance claim may exist without valid claim for coverage).

5

Although Assurance cites some Ohio appellate decisions[1] which apparently conflict with the Ohio Supreme Court's decisions in Staff Builders and Hoskins, this district court sitting in diversity is bound to follow state law in accordance with the decisions of the highest court of the state. Meridian Mut. Ins. Co. v. Kellman, 197 F.3d 1178, 1181 (6th Cir. 1999); Clutter v. Johns-Manville Sales Corp., 646 F.2d 1151, 1153 (6th Cir. 1981).

As to the issue of a stay, the Supreme Court of Ohio has ruled:

> In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage.

Boone v. Vanliner Ins. Co., 91 Ohio St.3d 209, 744 N.E.2d 154 (2001) (syllabus). At the same time, the court stated that "if the trial court finds that the release of this information will inhibit the insurer's ability to defend on the underlying claim, it <u>may</u> issue a stay of the bad faith claim and related production of discovery pending the outcome of the underlying claim." Id. at 213-214, 744 N.E.2d at 158 (emphasis added).

However, Boone does not <u>require</u> bifurcation; the state high court "simply recognizes that if the trial court finds the release of certain information may be

---

[1] See, e.g., Daniels v. Citizens Ins. Co. of Ohio, No. CA2005-03-008, 2005 WL 3097878, at *2 (Ohio Ct. App. Nov. 21, 2005) ("reasonable minds could only conclude that, without the insurance coverage, appellants cannot maintain a tort claim of bad faith against [the insurer]"), cited at doc. 24, at 4. The Sixth Circuit in Warren v. Federal Ins. Co., No. 08-4448, 2009 WL 4927968, at *6 (6th Cir. Dec. 22, 2009), merely found no abuse of discretion where the district court bifurcated a bad faith claim.

6

prejudicial, it may stay the bad faith claim and related production of documents." Professionals Direct Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner, LPA, No. 2:06CV240, 2008 WL 4758679, at *3 (S.D. Ohio Oct. 27, 2008). "There is no absolute rule that a coverage claim should always be bifurcated from bad faith claim." Chubb, 2008 WL 4823069, at *3.

Federal courts in Ohio "have not concluded that defendants in bad faith cases will automatically be prejudiced by simultaneous discovery of coverage and bad faith claims or that a stay of discovery is always warranted." Gaffney v. Federal Ins. Co., No. 5:08CV76, 2008 WL 3980069, at *2 (N.D. Ohio Aug. 21, 2008); see also Woods, 2010 WL 1032018, at *3. Whether the court bifurcates a bad faith claim and stays discovery is within the discretion of the district court. Warren v. Federal Ins. Co., No. 08-4448, 2009 WL 4927968, at *6 (6th Cir. Dec. 22, 2009) (finding no abuse of discretion where court bifurcated bad faith claim); Woods, 2010 WL 1032018, at *1.

In Ferro Corp. v. Continental Cas. Co., the court granted defendants' motion to bifurcate and stay a claim of bad faith. Ferro, 2008 WL 5705575, at *1. The case arose from "numerous bodily injury lawsuits" against Ferro, alleging injuries form asbestos products manufactured by Ferro. Id. The case was "further complicated by the fact that Ferro is seeking coverage from multiple insurers, some of which issued multiple policies." Id. at *4. The court decided that "the unique facts of this case justify bifurcation of the bad faith claim, and a stay of discovery on that issue."

7

Id. at *3. Assurance does not point to any similar unique facts, and indeed this case would appear to be relatively straightforward, given the claims involved.

Given the "general rule that disputes should be resolved in a single proceeding," and that bifurcation should be ordered only in exceptional cases, Woods, 2010 WL 1032018, at *1; Chubb, 2008 WL 4823069, at *2; it is not surprising that federal courts more often deny motions to bifurcate and stay. See, e.g., Woods, 2010 WL 1032018, at *4 (denying motion to bifurcate and stay); Professionals Direct, 2008 WL 4758679, at *4 (same); Gaffney, 2008 WL 3980069, at *3 (same); Chubb, 2008 WL 4823069, at *4 (same).

In Woods, for example, the court noted that Boone did not stand for the proposition "that defendants in bad-faith cases faced with such disclosure [of privileged documents] will always suffer prejudice or that a stay of discovery on the bad-faith issues is always justified." Woods, 2010 WL 1032018, at *3. The court stated that the decision to bifurcate or stay depends on the individual circumstances of the case. Id. The court explained:

> A defendant cannot rely on mere assertions that permitting discovery on the bad-faith claim will prejudice its ability to defend the underlying coverage claim; a specific showing is required. Similarly, a defendant may not rely on the mere possibility that resolution of the coverage issue may preclude plaintiff's bad-faith claim.

Woods, 2010 WL 1032018, at *3 (internal citations omitted).

In Woods, discovery on the bad-faith claim had not yet taken place. Woods, 2010 WL 1032018, at *3. Therefore, the court reasoned:

8

> Because substantial discovery has not taken place, many of the facts needed to determine whether bifurcation is appropriate are unknown. There is no reason to believe at this juncture that a jury would be confused by the presentation of evidence on both the insurance coverage and State Farm's alleged bad faith. In addition, the plaintiffs have not formally requested privileged documents from State Farm's claims file and have not noticed Mr. Ryan's deposition. Nor has State Farm produced such documents for an in camera review. Accordingly, any prejudice to State Farm from trying the claims together or from simultaneous discovery is speculative at this time. On the other hand, requiring the plaintiffs to engage in two separate sets of discovery and two trials should they prevail on their breach of contract claim would result in considerable prejudice given their limited finances.

Woods, 2010 WL 1032018, at *3 (internal citations omitted). The court denied the motion to bifurcate and stay discovery as premature, without prejudice to renew at the end of discovery, should the insurer be able to demonstrate that "it will suffer legal prejudice in the event the coverage and bad-faith claims are tried together" Id. at *4.

In Professionals Direct, the court found that the insurer "ha[d] not demonstrated that it would be unfairly prejudiced by producing the documents and proceeding with the claims all at once." Professionals Direct, 2008 WL 4758679, at *3. The court found that "bifurcating the bad-faith claim, which may result in two separate trials could result in a significant hardship to both parties." Id. The court pointed out that the Sixth Circuit has ruled that when "the claim and the counterclaim will raise many similar factual issues . . . judicial economy will be served by the resolution of the entire controversy in one forum." Id. (quoting Taylor Novelty, Inc. v. City of Taylor, 816 F.2d 682 (6th Cir. 1987) (TABLE, text in WESTLAW)).

9

In Gaffney, the court found that the insurer had not demonstrated "how it will be prejudiced by simultaneous discovery beyond merely asserting that allowing discovery of the bad faith claim will prejudice its ability to defend the coverage claim." Gaffney, 2008 WL 3980069, at *3. The court went on to note that, even if the insurer had provided specifics on that issue, "prejudice to defendant is only one factor to be considered in analyzing a motion for stay of discovery. Other factors include prejudice to plaintiff and judicial economy." Id.

The court stated that the scenario proposed by the insurer "would result in the following sequence: 1) discovery on coverage; 2) trial on coverage; 3) discovery on bad faith; and 4) trial on bad faith." Gaffney, 2008 WL 3980069, at *2. The court found that this "would result in protracted and duplicative discovery that would significantly increase both discovery and trial costs, and significantly extend the case management timeline of this case, resulting in both prejudice the plaintiffs and wasted judicial resources." Id.

On the other hand, combining simultaneous discovery of the coverage and bad faith claims would eliminate duplicative discovery and result in a shorter discovery period. Id. at *3. The court denied the motion to stay discovery on the bad faith claim, finding that the prejudice to plaintiffs "and negative impact on judicial economy outweighs the speculative prejudice to [the insurer] that may result from simultaneous discovery of the coverage and bad faith claims." Id.

As to the motion for bifurcation, the court concluded it was premature to exercise its discretion, and denied the motion to bifurcate without prejudice to renew. Gaffney, 2008 WL 3980069, at *3.

Here, Assurance argues that it will be prejudiced by having to argue alternative defense theories, which may conflict with one another, and that this may lead to juror confusion. (Doc. 20, at 4-5.) Having to argue alternative legal theories is not unusual or exceptional, and the court does not consider this possibility to be sufficiently prejudicial to support bifurcation. See, e.g., Woods, 2010 WL 1032018, at *3.

Regarding discovery, as well as bifurcation, Assurance argues that unless Creatore prevails on his claim for breach of contract, the issues of bad faith and punitive damages will be moot. (Doc. 20, at 6, citing cases, and 8-9; doc. 24, at 4-6.) The court disagrees, as discussed earlier. See, e.g., Penton Media, 2007 WL 2332323, at *5 (bad faith in adjustment of insurance claim may exist without valid claim for coverage); Chubb, 2008 WL 4823069, at *3; Staff Builders, 37 Ohio St.3d at 302, 525 N.E.2d at 788 (quoting Hoskins, 6 Ohio St.3d at 276, 452 N.E.2d at 1320). For example, in support of a claim of bad faith, Creatore alleges that "Assurance provided no response to Mr. Creatore's claim and request for defense, not even a denial." (Doc. 21, at 3.)

Bifurcation of claims is to be ordered only in exceptional cases. Woods, 2010 WL 1032018, at *1; Chubb, 2008 WL 4823069, at *2. Having considered the arguments put forward by the parties, the court is not convinced that Assurance

11

has met its burden of demonstrating that the facts in this case weigh in favor of granting the motion to bifurcate the bad faith and breach of contract (coverage) claims. See Woods, 2010 WL 1032018, at *1; Ferro, 2008 WL 5705575, at *2. Rather, it appears that judicial economy will be better served by the resolution of the entire controversy in one proceeding. The motion to bifurcate the bad faith claim should be denied at this point, without prejudice to renew at the close of discovery.

As in Gaffney, Assurance has failed to demonstrate "how it will be prejudiced by simultaneous discovery beyond merely asserting that allowing discovery of the bad faith claim will prejudice its ability to defend the coverage claim." See Gaffney, 2008 WL 3980069, at *3; see also Chubb, 2008 WL 4823069, at *4. The motion to stay discovery on the bad faith claim, and punitive damages, should be denied.

SUMMARY

The motion to bifurcate and stay (doc. 20) should be denied in part, and granted in part. The motion to stay discovery on the bad faith claim, and punitive damages, should be denied. The motion to bifurcate the bad faith and breach of contract (coverage) claims should be denied, without prejudice to renew. The motion to bifurcate the claim for punitive damages should be granted as required by Ohio Rev. Code § 2315.21.

## RECOMMENDATION

It is recommended that the motion to bifurcate and stay (doc. 20) should be denied in part, and granted in part, as outlined above.


Dated:  June 24, 2010              /s/ Kenneth S. McHargh
                                   Kenneth S. McHargh
                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).